# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA RAMIREZ, on behalf of herself and all other similarly situated employees<br><br>Plaintiff,<br><br>v.<br><br>MANPOWER, INC., MANPOWERGROUP PUBLIC SECTOR INC., MANPOWERGROUP US INC., MANPOWER, INC./CALIFORNIA PENINSULA, and DOES 4 through 50, inclusive,<br><br>Defendants. | Case No. 13-cv-02880-BLF<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO INTERVENE; AND DENYING MOTION TO DISMISS AS MOOT**<br><br>[Re: ECF 33, 83, 91] |

Plaintiff Patricia Ramirez was employed by a temporary services employment agency, Manpower Inc./California Peninsula ("MI/CP"), for three days in January 2013. She brings this putative class action against MI/CP and against three other entities, Manpower, Inc. ("MPI"), Manpowergroup Public Sector Inc. ("MPSI"), and Manpowergroup US Inc. ("MPUSI") (collectively, "Defendants"). Her operative second amended complaint ("SAC") asserts various state labor code violations pertaining to Defendants' alleged failure to pay wages for orientation, training, and assessment meetings. (SAC ¶¶ 25-28)

Defendants move for summary judgment on the grounds of judicial estoppel and lack of standing. Separately, Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Additionally, two individual members of the putative class seek to intervene in the action as additional named plaintiffs.

The Court has considered the briefing and the oral argument that was presented at the hearing on July 3, 2014. For the reasons discussed below, the motion for summary judgment is GRANTED, the motion to intervene is DENIED, and the motion to dismiss is DENIED as moot.

## I. BACKGROUND

Plaintiff worked as a temporary services employee for a three-day period from January 23, 2013 through January 25, 2013. (SAC ¶ 20, ECF 32) Her paycheck reflected that she was employed by MI/CP. (*Id.* ¶ 26) On March 13, 2013, Plaintiff filed this putative class action in the Monterey County Superior Court against a different entity, MPI, asserting violations of state labor laws and unfair competition laws ("UCL"). (Not. of Removal Exh. A, ECF 1) Plaintiff later substituted MPSI and MPUSI for Does 1 and 2, respectively. (Not. of Removal Exh. E, ECF 1) Defendants removed the action to the Northern District of California on June 21, 2013. (Not. of Removal, ECF 1)

On April 12, 2013, Plaintiff filed a second putative class action in the Monterey County Superior Court, alleging state labor law and UCL claims against MI/CP. (Defs.' RJN Exh. B, ECF 83-2)[1] That action was removed to the Northern District of California on July 12, 2013. (Not. of Removal, ECF 1 in Case No. 5:13-cv-03238-EJD)

In January 2014, the Court permitted Plaintiff to join MI/CP as a defendant in the present action and to dismiss the later-filed action against MI/CP. (Order Granting Defs.' Motion to Join Parties, ECF 31; Order Granting Stipulation of Dismissal, ECF 27 in Case No. 5:13-cv-03238-EJD). Plaintiff filed the operative SAC in the present action on January 31, 2014, asserting claims against MI/CP, MPI, MPSI, and MPUSI. (SAC, ECF 32) The SAC sets forth eight claims for violations of California Labor Code provisions and the Unfair Competition Law, supported by

---

[1] In connection with the pending motions, both sides request that the Court take judicial notice of documents filed in the Monterey County Superior Court, the United States Bankruptcy Court, and this Court. Those requests are GRANTED. *See Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) (holding that judicial notice is appropriate with respect to federal court and state court proceedings). Defendants additionally seek judicial notice of prefiling letters submitted to the California Labor Workforce Development Agency and Plaintiff's redacted 2013 W-2 form. Those requests are DENIED, as the documents in question do not contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b).

allegations that she and the putative class were not paid wages for required training, meetings, orientations, assessment testing and termination meetings. (SAC ¶¶ 21-25, 28-38)

Relevant to the motion for summary judgment, the undisputed facts show that on August 29, 2013, after removal of the two state court actions and before their consolidation, Plaintiff filed a Chapter 7 Petition in the United States Bankruptcy Court for the Northern District of California. (Defs.' RJN Exh. E) She did not disclose either this lawsuit or the later-filed lawsuit in her Schedule of Assets. (*Id.* at 8-12) Specifically, when asked to list "Other contingent and unliquidated claims of every nature," Plaintiff identified only "Accrued unemployment benefits." (*Id.* at 10) Plaintiff's debts were discharged by the Bankruptcy Court on December 10, 2013. (Defs.' RJN Exh. F) Throughout her bankruptcy proceedings, Plaintiff was represented by counsel. (Defs.' RJN Exhs. E, G)

On May 13, 2014, Defendants learned of Plaintiff's bankruptcy during her deposition. (*See* Opp. to Mot. to Intervene at 4, ECF 102) On May 22, 2014, Defendants filed the present Motion for Summary Judgment, asserting that (1) Plaintiff is judicially estopped from pursuing this lawsuit because she failed to disclose it in her bankruptcy case and (2) Plaintiff lacks standing to pursue this lawsuit because the lawsuit was the property of the bankruptcy estate and was not abandoned to Plaintiff prior to discharge. It is not clear when Plaintiff's attorney in this case became aware of the potential effect of Plaintiff's bankruptcy. Within a week after the filing of Defendants' Motion for Summary Judgment, Plaintiff, with the assistance of new bankruptcy counsel, moved to reopen her Chapter 7 bankruptcy case and submitted an amended Schedule of Assets disclosing this lawsuit. (Pl.'s RJN Exhs. A and B) Plaintiff's counsel in the present case also filed a motion to intervene on behalf of two putative class members who seek to intervene as additional plaintiffs. (Mot. to Intervene, ECF 91) Those motions, along with Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), now are before the Court.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*

3

*Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party has the burden of establishing that there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.     Analysis**

Fatal to Plaintiff's case is her own conduct whereby she concealed her bankruptcy filing from the attorneys and the Court in this case and, likewise concealed this lawsuit from her creditors and the bankruptcy trustee in the bankruptcy action. As set forth below, case law reveals Plaintiff's conduct to be all too common and thus well-established precedent applying judicial estoppel against the offending party dictates entry of summary judgment against her. *See Ah Quin v. County of Kauai Dep't of Trans.*, 733 F.3d 267, 271 (9th Cir. 2013). Because she has provided no admissible evidence regarding the reasons for her conduct, Plaintiff has failed to raise a triable issue of material fact as to whether the omissions from her bankruptcy schedules were inadvertent or mistaken. *See Dzakula v. McHugh*, 746 F.3d 399, 401-02 (9th Cir. 2013).

**1.     Evidentiary Objections to Harris Declaration**

Before discussing the judicial estoppel doctrine in detail, the Court takes up Defendants' evidentiary objections with respect to the declaration of Plaintiff's current bankruptcy counsel, Justin D. Harris, submitted in opposition to the motion for summary judgment. (*See* Objs. and MTS, ECF 101-2) The Court's rulings are as follows:

Objection 1:   Sustained. Lack of foundation and personal knowledge. *See* Fed. R. Evid. 602.

Objection 2:   Overruled in part and Sustained in part. The statement is admissible to show that an amended Schedule B was filed with an estimate of

4
13-cv-02880-BLF
ORDER GRANTING DEFENDANTS' MSJ, DENYING MOTION TO INTERVENE, AND DENYING MTD

|  |  |
|---|---|
|  | $18,000, but it is not admissible for the truth of the valuation. Lack of foundation and personal knowledge. *See* Fed. R. Evid. 602. Inadmissible opinion testimony. *See* Fed. R. Evid. 701-02. |
| Objection 3: | Overruled. |
| Objection 4: | Sustained. Lack of foundation and personal knowledge. *See* Fed. R. Evid. 602. |
| Objection 5: | Overruled. |
| Objection 6: | Sustained. Inadmissible opinion testimony. *See* Fed. R. Evid. 701-02. |
| Objection 7: | Overruled. |
| Objection 8: | Sustained. Lack of foundation and personal knowledge. *See* Fed. R. Evid. 602. Inadmissible opinion testimony. *See* Fed. R. Evid. 701-02. |
| Objection 9: | Sustained. Lack of foundation and personal knowledge. *See* Fed. R. Evid. 602. Inadmissible opinion testimony. *See* Fed. R. Evid. 701-02. Irrelevant. *See* Fed. R. Evid. 401-03. |
| Objection 10: | Overruled. |

### 2. Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The doctrine is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (internal quotation marks and citation omitted) (alteration in original).

The Supreme Court has articulated three factors that "typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "First, a party's later position must be clearly inconsistent with its earlier position." *Id.* (internal quotation marks and citation omitted). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks and citation omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair

5

advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

"In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin*, 733 F.3d at 271. "The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim *does* exist." *Id.* (emphasis in original). This rule comports fully with the Supreme Court's articulation of the *New Hampshire* factors and "also comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent litigants from playing fast and loose with the courts and to protect the integrity of the judicial system." *Id.* (internal quotation marks and citation omitted).

The basic rule articulated above may not apply, however, "when a party's prior position was based on inadvertence or mistake." *Ah Quin*, 733 F.3d at 271. In the Ninth Circuit, the existence of inadvertence or mistake is evaluated differently depending on whether the debtor has reopened bankruptcy proceedings and corrected the bankruptcy schedules to reflect the previously omitted lawsuit. *Id.* at 272-77. When a debtor has not reopened bankruptcy proceedings, the term "inadvertence" is given a narrow interpretation. *Id.* at 272. Under that narrow interpretation, the court asks "only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim." *Id.* at 271. If these questions are answered in the affirmative, a presumption of deceit arises. *Id.* at 273. When a plaintiff-debtor *has* reopened bankruptcy proceedings, however, the narrow interpretation and the presumption of deceit do not apply. *Id.* at 276. Instead, the court must inquire "whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood." *Id.* "The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset – though those are certainly factors." *Id.* "The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Id.* at 276-77.

When the plaintiff-debtor has reopened bankruptcy proceedings *and* the record evidence could support "a conclusion either of mistake and inadvertence, or of deceit," summary judgment

6

1   is inappropriate. *Ah Quin*, 733 F.3d at 277-78. In *Ah Quin*, the plaintiff-debtor opposed the
2   defendant's motion for summary judgment with an affidavit "in which she swore that, when she
3   reviewed the bankruptcy schedules, she did not think that she had to disclose her pending lawsuit
4   because the bankruptcy schedules were 'vague.'" *Id.* at 277. The plaintiff also listed her counsel
5   in the pending lawsuit as a creditor in her bankruptcy schedules; the plaintiff argued in opposition
6   to summary judgment that she would not have listed her counsel if she were trying to hide the
7   lawsuit from the bankruptcy court. *Id.* at 277-78. The plaintiff's counsel brought the bankruptcy
8   to the attention of the defendant's counsel at a settlement conference. *Id.* at 278. Viewing this
9   evidence in the light most favorable to the plaintiff, the Ninth Circuit held that the district court
10  had erred in granting summary judgment for the defendant despite significant evidence that the
11  plaintiff knew that she was required to disclose the lawsuit on her bankruptcy schedules. *Id.* The
12  Ninth Circuit noted that "[o]n remand, after such further factual development as may be
13  appropriate, the district court might find that Plaintiff's affidavit is not trustworthy and that
14  Plaintiff's omission was not mistaken or inadvertent. Alternatively, the court might find that
15  Plaintiff's omission was mistaken or inadvertent." *Id.* at 279. The Ninth Circuit vacated the grant
16  of summary judgment and remanded for further proceedings.

17  When the record is *devoid* of evidence of mistake or inadvertence, judgment for the
18  defendant is warranted. *See Dzakula*, 746 F.3d at 402. In *Dzakula*, the defendant moved to
19  dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the plaintiff
20  was judicially estopped from litigating the action because she had failed to list the action in her
21  bankruptcy schedules. *Dzakula v. McHugh*, No. C 10-05462 PSG, 2011 WL 1807241, at *1 (N.D.
22  Cal. April 22, 2011). After the defendant moved to dismiss, the plaintiff amended her bankruptcy
23  schedules to add the lawsuit as a potential asset. *Dzakula*, 746 F.3d at 400. After the plaintiff
24  added the lawsuit to her schedules, the bankruptcy court discharged her debts and closed the
25  bankruptcy case. *Id.* The district court nonetheless dismissed the lawsuit as barred by the judicial
26  estoppel doctrine, noting that the plaintiff had not provided any explanation regarding her failure
27  to include the lawsuit in the bankruptcy schedules in the first place. *Id.* at 401. The district court
28  pointed out that the plaintiff was "silent on whether omission of the pending action from the

schedules was inadvertent or intentional," and that the plaintiff could have filed a declaration on this issue.[2] *Id.* The Ninth Circuit affirmed, distinguishing *Ah Quin* on the ground that the plaintiff in *Dzakula* "presented no evidence, by affidavit or otherwise, explaining her initial failure to include the action on her bankruptcy schedules." *Id.* The Ninth Circuit rejected the plaintiff's argument that an evidentiary hearing was required as to her intent, concluding that on the record before it "no reasonable fact-finder could conclude that the omission was inadvertent or mistaken." *Id.* at 402.

The present case is on all fours with *Dzakula*. At the time Plaintiff filed for bankruptcy, this lawsuit and the second lawsuit against MI/CP were pending in the Northern District of California, yet Plaintiff failed to list either lawsuit on her bankruptcy schedules. Plaintiff reopened her bankruptcy case and filed amended schedules only in response to Defendants' motion for summary judgment. Most importantly, Plaintiff has not filed a declaration explaining why she initially omitted this lawsuit from her bankruptcy schedules; like the plaintiff in *Dzakula*, Plaintiff is "silent on whether omission of the pending action from the schedules was inadvertent or intentional." *Dzakula*, 746 F.3d at 401. The only evidence Plaintiff submits on this point is the declaration of her current bankruptcy attorney, Mr. Harris, stating that she or her former bankruptcy attorney omitted the pending action from the bankruptcy schedules "inadvertently." (*See* Harris Decl. ¶ 3, ECF 98). As indicated above in Section II.B.1, this statement is inadmissible because Mr. Harris has not laid a foundation for any personal knowledge as to the state of mind of Plaintiff or her former bankruptcy attorney at the time the bankruptcy schedules were filed.[3] Thus, Mr. Harris's declaration statement is insufficient to create a triable issue as to

---

[2] Presumably, such a declaration could have been submitted in opposition to the defendant's Rule 12(b)(1) motion. *See Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (when resolving a Rule 12(b)(1) motion, the court may consider evidence outside of the pleadings without converting a motion to dismiss into a motion to one for summary judgment). The district court could not have considered such a declaration in opposition to the defendant's Rule 12(b)(6) motion. *See New Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011) (when resolving a Rule 12(b)(6) motion "review is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice").

[3] Defendants' objection to Mr. Harris's statement is sustained under Federal Rule of Evidence 602, providing that "[a] witness may testify to a matter only if evidence is introduced sufficient to

8
13-cv-02880-BLF
ORDER GRANTING DEFENDANTS' MSJ, DENYING MOTION TO INTERVENE, AND DENYING MTD

Plaintiff's state of mind when she filed her bankruptcy schedules.

Plaintiff also points to Mr. Harris's estimate that her recovery in this lawsuit will be only $18,000. (Harris Decl. ¶ 5, ECF 98) Plaintiff has amended her bankruptcy schedules to include this estimated valuation. (*Id.*) Mr. Harris states in his declaration that the $18,000 estimated value of the lawsuit, combined with all of Plaintiff's remaining property, is within her allowable bankruptcy exemptions. (*Id.*) Thus, Plaintiff argues, her initial omission of this lawsuit from her bankruptcy schedules did not affect the outcome of the bankruptcy case. As indicated above in Section II.B.1, Defendants' objection to Mr. Harris's statements is overruled as to the fact that an amended Schedule B was filed, but sustained as to the truth of the valuation.[4]

Even if it were to assume that counsel is correct in asserting that inclusion of the lawsuit on the original bankruptcy schedules would not have "affected" the bankruptcy, Plaintiff has not cited any authority showing that the judicial estoppel analysis would be altered. Plaintiff relies upon *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 1063433 (N.D. Apr. 9, 2007). Initially, the Court observes that *Moreno* is an outdated, unpublished district court decision that preceded the Ninth Circuit's most recent guidance on judicial estoppel in *Ah Quin* and *Dzakula*. Moreover, *Moreno* offers little, if any, support for Plaintiff's position. In *Moreno*, the district court granted summary judgment against the plaintiff for lack of standing based upon the plaintiff's failure to disclose those claims in Chapter 7 proceedings. *Moreno*, 2007 WL 1063433, at *5. Although the court acknowledged that it did not need to reach the issue of judicial estoppel given its disposition on the issue of standing, the court indicated that it would not have applied the doctrine of judicial estoppel in light of uncertainty as to whether the concealed claims would have affected the bankruptcy case. *Id.* at *7. That indication was *dicta* and, as noted, it preceded the Ninth Circuit's most recent pronouncements regarding the judicial estoppel doctrine.

Finally, Plaintiff argues that judicial estoppel is inappropriate where, as here, the

---

support a finding that the witness has personal knowledge of the matter."

[4] Counsel's lack of foundation for the valuation is apparent from his admission that it was difficult to estimate the value of the lawsuit "given the fact that the class has not yet been certified, the class members are largely unknown, and the resulting damages are speculative, given the early stages of the case and scant information disclosed thus far." (Harris Decl. ¶ 5, ECF 98)

underlying bankruptcy case has been reopened.  However, the Ninth Circuit has stated that, "Along with most of our sister circuits, we have held that – at least where the plaintiff-debtor does not claim inadvertence or mistake – the reopening of a bankruptcy case is generally irrelevant to the analysis of judicial estoppel." *Ah Quin*, 733 F.3d at 273.  As noted above, Plaintiff introduces no admissible evidence that omission of the lawsuit from her bankruptcy schedules was due to mistake or inadvertence.

Accordingly, Defendants' motion for summary judgment is GRANTED on the basis of judicial estoppel.

### 3. Standing

Defendants further argue that Plaintiff lacks standing to litigate this action.  Defendants correctly state that legal claims accruing before the filing of the bankruptcy petition are the property of the bankruptcy estate and, unless abandoned by the bankruptcy trustee, may be asserted only by the estate as the real party in interest.  *See Estate of Spirtos v. One San Bernardino County Super. Ct.*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("the bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate"); *see also, Britto v. Bank of America, N.A.*, No. C 13-03508 WHA, 2013 WL 5587400, at *2 (N.D. Cal. Oct. 10, 2013) ("Property is not abandoned by the trustee by operation of law unless the debtor formally schedules the property before the close of the case."); *In re Edwards*, BAP No. CC-11-10100PaMkAl, 2011 WL 4485560, at *4 (9th Cir. BAP Aug. 26, 2011) (claims arising out of pre-petition foreclosure proceedings were property of the estate such that the chapter 7 trustee had "the exclusive authority to prosecute these claims on behalf of the estate").

Plaintiff had standing when she filed the present action but she lost the legal right to prosecute the action when she subsequently filed for bankruptcy protection.  It is unclear whether the effect of the bankruptcy most properly is analyzed as a loss of prudential standing, *see Neal v. NaturalCare, Inc.*, No. EDCV 12-0531-DOC (OPx), 2014 WL 346639, at *3 (C.D. Cal. Jan. 30, 2014) (plaintiff lacked prudential standing to proceed with litigation as of the date she filed for bankruptcy), or as a mootness issue, *see Moore's Federal Practice*, vol. 15, §101.32 (standing generally is assessed on the date the complaint is filed while mootness is implicated if subsequent

events cause the plaintiff to lose her interest in the litigation).  The court need not resolve this issue given its disposition on the ground of judicial estoppel.

### III. MOTION TO INTERVENE

Two putative class members, Claudia Padilla ("Padilla") and Lesli Guido ("Guido") ("Proposed Intervenors") seek leave to intervene in this action under both Federal Rule of Civil Procedure 24(a), governing intervention as of right, and Federal Rule of Civil Procedure 24(b), governing permissive intervention.  Defendants contend that neither intervention as of right nor permissive intervention is warranted under the standards applicable to Rule 24.[5]

#### A. Intervention as of Right

An applicant seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must "make four showings to qualify under this Rule:  (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (internal quotation marks and citation omitted).  "[F]ailure to satisfy any one of the requirements is fatal to the application"; the Court need not reach the remaining elements if it determines that one of the elements is not satisfied. *Id.* (internal quotation marks and citation omitted).

Proposed Intervenors have failed to establish that disposition of this lawsuit will, as a practical matter, impair or impede their ability to protect their interests.  On May 29, 2014, Guido

---

[5] Defendants make an additional argument that intervention is precluded by Plaintiff's current lack of prudential standing arising from the bankruptcy case.  As noted above, it is not clear whether the effect of the bankruptcy most properly is analyzed as a loss of prudential standing or a mootness issue.  Moreover, most of the cases cited by Defendants arose after class certification when it was determined that the class representative lacked *Article III* standing to bring the lawsuit *in the first instance*.  *See, e.g., Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (court may not substitute new class representative when original class representative lacked Article III standing to bring lawsuit in the first instance); *Kirola v. City and County of San Francisco*, No. C 07-3685 SBA, 2014 WL 1729273, at *4 (Apr. 29, 2014) (same).  The one case more closely on point is an unpublished decision from the Central District of California.  *See Neal*, 2014 WL 346639.  Given the absence of more compelling authority, and in light of the Court's conclusion that intervention is not warranted under Rule 24, the Court declines to address Defendants' standing-based argument.

11
13-cv-02880-BLF
ORDER GRANTING DEFENDANTS' MSJ, DENYING MOTION TO INTERVENE, AND DENYING MTD

and another individual, represented by Plaintiff's counsel herein, filed a putative class action asserting state labor law and UCL claims against all four Manpower entities.  (Defs.' RJN Exh. A, ECF 102)  After comparing the newly filed state court action with the operative SAC in the present action, the Court concludes that the two actions seek to represent the same class of employees with respect to substantially the same claims.  Proposed Intervenors have not demonstrated that the state court action is inadequate to protect their interests.[6]

### B. Permissive Intervention

A court may permit intervention by an applicant who has "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  When considering a motion for permissive intervention, a court considers a number of factors, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry*, 630 F.3d at 905 (quoting *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)) (alteration in original).  "The district court is given broad discretion" in deciding whether to allow permissive intervention.  *Id.*  Here, the Court concludes that Proposed Intervenors do not have a significant interest in this lawsuit because their rights are adequately protected by the state court litigation filed by Plaintiff's counsel on behalf of Guido and another individual.  Moreover, intervention would unduly prolong and delay this litigation.  As discussed above, Defendants have established their entitlement to summary judgment with respect to Plaintiff.  If new party plaintiffs were joined, Defendants would have to start from ground zero with respect to the facts underlying those individuals' claims.

Proposed Intervenors suggest that the Court should permit intervention under Federal Rule of Civil Procedure 17, providing that "[t]he court may not dismiss an action for failure to

---

[6] When questioned at the hearing, Plaintiff's counsel conceded that intervention is not mandated in this case and that the Court has discretion to grant or deny the motion.

12
13-cv-02880-BLF
ORDER GRANTING DEFENDANTS' MSJ, DENYING MOTION TO INTERVENE, AND DENYING MTD

prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).  Proposed Intervenors contend that the putative class members are the real parties in interest and that the Court should permit the intervention because Plaintiff no longer can protect that interest.  The cases cited by Proposed Intervenors do not even mention Rule 17.  *See, e.g., National Federation of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2008 WL 54377 (N.D. Cal. Jan. 3, 2008); *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 5384760 (N.D. Cal. Dec. 22, 2008).  Moreover, while the courts may have found that intervention or substitution of the class representative was appropriate on the facts of those particular cases, this Court concludes that intervention is not appropriate on the facts of *this* case.

The Court might have a different view if this case were further along or if a class had been certified.  However, given the procedural posture of the case, and for the reasons discussed above, the Court in the exercise of its discretion declines to permit the requested intervention.

Accordingly, the Motion to Intervene is DENIED.

## IV. MOTION TO DISMISS

In light of the Court's disposition of Defendants' motion for summary judgment, the motion to dismiss for failure to state a claim is DENIED as moot.

## V. ORDER

For the foregoing reasons,

(1) Defendants' Motion for Summary Judgment is GRANTED;

(2) The Motion to Intervene is DENIED; and

(3) Defendants' Motion to Dismiss is DENIED as moot.

Dated: July 10, 2014

_____
BETH LABSON FREEMAN
United States District Judge